IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. | ) | |
| JUAN SANCHEZ, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 07 C 6099 |
| | ) | |
| EDDIE JONES, Warden, | ) | |
| Pontiac Correctional Center, | ) | The Honorable |
| | ) | Blanche M. Manning, |
| Respondent. | ) | Judge Presiding. |

**F I L E D**

DEC 2 6 2007 *PH*

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## INDEX OF EXHIBITS CITED IN RESPONDENT'S MOTION TO DISMISS §2254 PETITION AS TIME-BARRED

Respondent files the following exhibits in support of his Motion to Dismiss §2254 Petition as Time-Barred:

Exhibit A:   *People v. Sanchez*, 800 N.E.2d 455 (Ill.App. 1st Dist. 2003);

Exhibit B:   Order Denying PLA, *People v. Sanchez*, No. 97501 (Ill. 2004);

Exhibit C:   Affidavit of Affirmation in Petition for Postconviction Relief;

Exhibit D:   Notification of Dismissal of Postconviction Petition;

Exhibit E:   *People v. Sanchez*, No. 1-04-2986 (Ill.App. 2006); and

Exhibit F:   Order Denying PLA, *People v. Sanchez*, No. 103127 (Ill. 2006).

December 26, 2007                    Respectfully submitted,


                                     LISA MADIGAN
                                     Attorney General of Illinois

                              By:    _____
                                     ERICA R. SEYBURN, Bar # 6287357
                                     Assistant Attorney General
                                     100 West Randolph Street, 12th Floor
                                     Chicago, Illinois 60601-3175
                                     PHONE: (312) 814-2139
                                     FAX: (312) 814-2253
                                     E-MAIL: eseyburn@atg.state.il.us



800 N.E.2d 455                                                    Page 1

344 Ill.App.3d 74, 800 N.E.2d 455, 279 Ill.Dec. 387
**(Cite as: 344 Ill.App.3d 74, 800 N.E.2d 455)**

**H**
People v. Sanchez
Ill.App. 1 Dist.,2003.

Appellate Court of Illinois,First District, Second
Division.
The PEOPLE of the State of Illinois,
Plaintiff-Appellee,
v.
Juan SANCHEZ, Jr., Defendant-Appellant.
**No. 1-02-0102.**

Nov. 4, 2003.

Defendant was convicted in bench trial in the
Circuit Court, Cook County, Henry R. Simmons, J.,
of aggravated criminal sexual assault, and he
appealed. The Appellate Court, Wolfson, J., held
that: (1) defendant's mandatory natural life sentence
for aggravated criminal sexual assault based on his
prior conviction for criminal sexual assault did not
violate proportionate penalties clause of State
Constitution; and (2) *Apprendi* did not render
defendant's natural life sentence unconstitutional.

Affirmed.
West Headnotes
**[1] Constitutional Law 92 ☞990**

92 Constitutional Law
    92VI Enforcement of Constitutional Provisions
        92VI(C) Determination of Constitutional
Questions
            92VI(C)3 Presumptions and Construction
as to Constitutionality
                92k990 k. In General. Most Cited Cases
        (Formerly 92k48(1))
A statute is presumed constitutional.

**[2] Constitutional Law 92 ☞1030**

92 Constitutional Law
    92VI Enforcement of Constitutional Provisions
        92VI(C) Determination of Constitutional

Questions
            92VI(C)4 Burden of Proof
                92k1030 k. In General. Most Cited
Cases
        (Formerly 92k48(1))
The party challenging the constitutionality of statute
bears the burden of demonstrating its invalidity.

**[3] Constitutional Law 92 ☞990**

92 Constitutional Law
    92VI Enforcement of Constitutional Provisions
        92VI(C) Determination of Constitutional
Questions
            92VI(C)3 Presumptions and Construction
as to Constitutionality
                92k990 k. In General. Most Cited Cases
        (Formerly 92k48(1))

**Constitutional Law 92 ☞1002**

92 Constitutional Law
    92VI Enforcement of Constitutional Provisions
        92VI(C) Determination of Constitutional
Questions
            92VI(C)3 Presumptions and Construction
as to Constitutionality
                92k1001 Doubt
                    92k1002 k. In General. Most Cited
Cases
        (Formerly 92k48(3))
A court has a duty to construe a statute in a manner
that upholds its constitutionality if it can reasonably
be done, and any doubt must be resolved in favor of
the statute's validity.

**[4] Criminal Law 110 ☞1139**

110 Criminal Law
    110XXIV Review
        110XXIV(L) Scope of Review in General
            110k1139 k. Additional Proofs and Trial
De Novo. Most Cited Cases
The question of a statute's constitutionality is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT A

800 N.E.2d 455                                                                                      Page 2

344 Ill.App.3d 74, 800 N.E.2d 455, 279 Ill.Dec. 387
**(Cite as: 344 Ill.App.3d 74, 800 N.E.2d 455)**

subject to de novo review.

**[5] Sentencing and Punishment 350H ⟨⟩⟩1504**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in
General
        350HVII(E)    Excessiveness    and
Proportionality of Sentence
        350Hk1504 k. Sex Offenses, Incest, and
Prostitution. Most Cited Cases
Female genital mutilation and aggravated criminal
sexual assault statutes did not share similar
purposes in that goal of mutilation statute was to
prohibit female circumcision, whereas goal of
aggravated sexual assault statute was to protect
victims from sexually harmful conduct, and besides
fact that the statutes had distinct legislative
purposes, mutilation was not more serious offense
than aggravated sexual assault where offender had
prior conviction for sexual assault, and thus,
defendant's mandatory natural life sentence for
aggravated sexual assault based on his prior
conviction for sexual assault did not violate
proportionate penalties clause of State Constitution.
S.H.A. Const. Art. 1, § 11; S.H.A. 720 ILCS
5/12-14(d)(2), 12-34(a); 730 ILCS 5/5-8-1(a).

**[6] Sentencing and Punishment 350H ⟨⟩⟩1483**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in
General
        350HVII(E)    Excessiveness    and
Proportionality of Sentence
        350Hk1483 k. Punishment Authorized by
Statute. Most Cited Cases
Use of cross-comparison analysis to determine
whether similar offense creating more serious threat
to public health and safety is punished less severely,
as will result in violation of proportionate penalties
clause of State Constitution, involves two-step
inquiry in which court asks (1) whether the offenses
being compared share a common statutory purpose,
and (2) if the purposes are related, whether the less
serious offense is punished more harshly than the
more serious offense; if the purposes of the two
statutes are different, comparative proportionality
review is inappropriate, and the inquiry ends.

S.H.A. Const. Art. 1, § 11.

**[7] Constitutional Law 92 ⟨⟩⟩2507(3)**

92 Constitutional Law
    92XX Separation of Powers
        92XX(C) Judicial Powers and Functions
            92XX(C)2 Encroachment on Legislature
            92k2499    Particular    Issues    and
Applications
            92k2507 Criminal Law
            92k2507(3) k. Sentencing and
Punishment. Most Cited Cases
    (Formerly 92k70.1(10))

**Sentencing and Punishment 350H ⟨⟩⟩8**

350H Sentencing and Punishment
    350HI Punishment in General
        350HI(A) In General
        350Hk5 Constitutional, Statutory, and
Regulatory Provisions
        350Hk8 k. Validity. Most Cited Cases
Where statutes are enacted for different purposes,
court presumes that the legislature considered
different factors in determining the appropriate
penalties for the offenses, and court defers to the
legislature's judgment.

**[8] Sentencing and Punishment 350H ⟨⟩⟩1483**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in
General
        350HVII(E)    Excessiveness    and
Proportionality of Sentence
        350Hk1483 k. Punishment Authorized by
Statute. Most Cited Cases
Under cross-comparison analysis to determine
whether similar offense creating more serious threat
to public health and safety is punished less severely,
as will result in violation of proportionate penalties
clause of State Constitution, if the purposes of the
two statutes are related, court must then determine
whether the offense with the harsher penalty is more
or less serious than the offense with the lesser
penalty, and factors to be considered in determining
the seriousness of an offense are the degree of harm,
the frequency of the crime, and the high risk of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

800 N.E.2d 455                                                    Page 3

344 Ill.App.3d 74, 800 N.E.2d 455, 279 Ill.Dec. 387
**(Cite as: 344 Ill.App.3d 74, 800 N.E.2d 455)**

bodily harm associated with it. S.H.A. Const. Art. 1, § 11.

**[9] Mayhem 256 ☜1**

256 Mayhem
    256k1 k. Nature and Elements of Offenses. Most Cited Cases
Goal of the female genital mutilation statute is to prohibit female ritual circumcision, an ancient cultural or social custom with no medical value which has health risks to a female child, and use of force is not a statutory element of the offense. S.H.A. 720 ILCS 5/12-34(a).

**[10] Rape 321 ☜2**

321 Rape
    321I Offenses and Responsibility Therefor
        321k2 k. Statutory Provisions. Most Cited Cases
Goal of the aggravated criminal sexual assault statute is to protect victims from, and punish perpetrators for, sexually harmful and offensive conduct. S.H.A. 720 ILCS 5/12-14.

**[11] Statutes 361 ☜188**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k187 Meaning of Language
                361k188 k. In General. Most Cited Cases
The language of a statute is the best indication of the legislature's intent.

**[12] Statutes 361 ☜217.4**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k213 Extrinsic Aids to Construction
                361k217.4 k. Legislative History in General. Most Cited Cases
Where a statute is ambiguous, court may turn to the legislative history as an aid in interpreting the provision.

**[13] Constitutional Law 92 ☜2507(3)**

92 Constitutional Law
    92XX Separation of Powers
        92XX(C) Judicial Powers and Functions
            92XX(C)2 Encroachment on Legislature
                92k2499 Particular Issues and Applications
                    92k2507 Criminal Law
                        92k2507(3) k. Sentencing and Punishment. Most Cited Cases
    (Formerly 92k70.1(10))
Legislature may perceive a need to enact a more stringent penalty provision in order to halt an increase in the commission of a particular crime, and because the legislature is better able than the judiciary to identify the evils confronting society and gauge the seriousness of an offense, courts will generally defer to the legislature's judgment that a particular offense is more serious than another.

**[14] Sentencing and Punishment 350H ☜1495**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(E) Excessiveness and Proportionality of Sentence
            350Hk1495 k. Homicide, Mayhem, and Assault with Intent to Kill. Most Cited Cases

**Sentencing and Punishment 350H ☜1504**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(E) Excessiveness and Proportionality of Sentence
            350Hk1504 k. Sex Offenses, Incest, and Prostitution. Most Cited Cases
Offenses of aggravated criminal sexual assault and first degree murder were not comparable, and thus, it was unnecessary to engage in a cross-comparison analysis of which offense was more serious and which received greater penalty with respect to determining whether penalty for one of the offenses violated proportionate penalties clause of State Constitution. S.H.A. Const. Art. 1, § 11.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.


800 N.E.2d 455                                                                                                    Page 4

344 Ill.App.3d 74, 800 N.E.2d 455, 279 Ill.Dec. 387
**(Cite as: 344 Ill.App.3d 74, 800 N.E.2d 455)**

**[15] Sentencing and Punishment 350H ☜1513**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(E) Excessiveness and Proportionality of Sentence
            350Hk1513 k. Habitual Offenders and Career Criminals. Most Cited Cases
Defendant's mandatory life sentence for aggravated criminal sexual assault based on his prior conviction for criminal sexual assault was not disproportionate to the crime in a way that shocked the moral sense of the community, and thus, his mandatory life sentence did not violate the proportionate penalties clause of State Constitution. S.H.A. Const. Art. 1, § 11; S.H.A. 720 ILCS 5/12-14(d)(2); 730 ILCS 5/5-8-1(a).

**[16] Jury 230 ☜34(7)**

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
            230k34 Restriction or Invasion of Functions of Jury
                230k34(5) Sentencing Matters
                    230k34(7) k. Particular Cases in General. Most Cited Cases
        (Formerly 230k34(1))
*Apprendi*'s holding that, other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt did not apply to a recidivist provision, stating that where a person is convicted of the offense of aggravated criminal sexual assault after having been convicted of a separate criminal sexual assault the person shall be sentenced to a term of natural life imprisonment, and thus, *Apprendi* did not render defendant's natural life sentence for aggravated criminal sexual assault based on his prior conviction for criminal sexual assault unconstitutional. S.H.A. 720 ILCS 5/12-14(d)(2).

**[17] Jury 230 ☜34(7)**

230 Jury

230II Right to Trial by Jury
    230k30 Denial or Infringement of Right
        230k34 Restriction or Invasion of Functions of Jury
            230k34(5) Sentencing Matters
                230k34(7) k. Particular Cases in General. Most Cited Cases
    (Formerly 230k34(1))
Statute providing that, where person is convicted of offense of aggravated criminal sexual assault after having been convicted of separate criminal sexual assault, the person shall be sentenced to term of natural life imprisonment did not violate the right of defendant, who received mandatory natural life sentence for aggravated criminal sexual assault based on his prior conviction for criminal sexual assault, to jury trial pursuant to State Constitution; defendant's prior conviction did not relate to commission of offense with which he was charged, and prior conviction was result of proceedings in which defendant had right to jury trial. S.H.A. Const. Art. 1, § 13; S.H.A. 720 ILCS 5/12-14(d)(2).

**458 *77 ***390** Michael J. Pelletier, Deputy Defender, and Elizabeth C. Smith, Assistant Appellate Defender, Office of the State Appellate Defender, Chicago, for Appellant.
Richard A. Devine, State's Attorney of Cook County, Chicago (Renee Goldfarb and Mary L. Boland, of counsel), for Appellee.
Justice WOLFSON delivered the opinion of the court:
The trial judge realized he had no choice: he had to sentence the defendant to life in prison. The single question in this case is whether the mandatory natural life sentence violated provisions of the United States and Illinois constitutions.

Following a bench trial, defendant Juan Sanchez, Jr., was convicted of aggravated criminal sexual assault. His mandatory natural life sentence was based on his prior conviction for criminal sexual assault.

On appeal, defendant contends: (1) his sentence violates the proportionate penalties clause of the Illinois Constitution (Ill. Const.1970, art. I, § 11); (2) the sentence was imposed in violation of his

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

800 N.E.2d 455

344 Ill.App.3d 74, 800 N.E.2d 455, 279 Ill.Dec. 387
**(Cite as: 344 Ill.App.3d 74, 800 N.E.2d 455)**

constitutional rights pursuant to the rule announced in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and (3) his sentence violates his right to a trial by jury under the Illinois Constitution. We affirm the defendant's conviction and sentence.

## FACTS

The indictment for aggravated criminal sexual assault charged that defendant: "committed an act of sexual penetration upon [Tess T.], to wit: contact between Juan Sanchez's penis and [Tess T.'s] vagina, by the use of force or threat of force and Juan Sanchez caused bodily harm to [Tess T.], to wit: bruising to [Tess T.'s] breast, in violation of Chapter 720 Act 5 Section 12-14(A)(2) of the Illinois Compiled Statutes 1992 as amended."

At trial, Tess T. testified she was 13 years old at the time of the incident. On January 4, 1999, she was with her father at his store in the mall. Defendant, whom Tess knew as a friend of the family, came and asked her to go with him to drop something off. She went with him, and, after a while, defendant parked the car. He tried to kiss Tess twice, but she pushed him away and told him no. The third time, he got on top of her and unfastened her pants and pulled down her pants and underwear. He put his fingers in her vagina and lifted up her shirt *78 and started sucking on her breast. Defendant then put his penis in her vagina. She tried to push him off but was not able to do so.

After defendant stopped, Tess put her clothes on and jumped in the back seat, and defendant drove away. When she recognized where she was, Tess jumped out of the car and ran back to the mall. She did not tell her father what happened because she was afraid of what he might do. When they got home, Tess told her mother what happened and they went to the hospital and the police station.

Cynthia T., Tess's mother, testified that Tess called her up to her bedroom immediately after arriving home. Tess started crying and told Cynthia what happened. Cynthia then called 9-11, and an ambulance came to take Tess to the hospital.

**459 ***391 Dr. Mark Chionis testified that he examined Tess at Edwards Hospital in Naperville, Illinois. She told him she was in an automobile and a person got on top of her, pulled down his pants and underwear and pulled down her underwear, and she felt pain in the vaginal area. She also said the person "aggressively kissed her breasts and nipple area." The physical examination revealed bruising around both nipple areas. There was extensive redness and bruising of the perineal area surrounding the vagina. The opening of the vagina was red and bruised.

Dr. Chionis said the pelvic examination was very difficult because the patient was in severe pain. He noticed a whitish discharge inside the vaginal vault and took a swab of her vaginal area. Dr. Chionis said the kissing would have to be very aggressive to have caused the bruising on her breasts. The bruises also could have been caused by being held down.

Chicago Police Officer Ivira Torres testified she had a conversation with Tess, who told her she had been raped. Tess's demeanor was shaken up and timid. Officer Torres said she did not recall if Tess told her she jumped out of defendant's car.

The parties stipulated that vaginal swabs taken from Tess and a stain on her underwear tested positive for semen. Barbara Wilson, a DNA analyst, testified that a male DNA profile from the vaginal swabs and semen stain from the underwear matched the DNA profile of defendant.

Defendant gave a statement at the police station to Assistant State's Attorney Luke Sheridan that was memorialized in a handwritten statement and read into the record.

In the statement, defendant said he had known Tess and her father for five years. On January 4, 1999, he saw Tess at the mall and asked her to go "cruising" around. She met him at the back of the mall, and they drove around for awhile. Then defendant parked the car and *79 began kissing Tess and "rubbing up" on her. Tess was kissing him and rubbing his chest and stomach. He lifted up her sweater and bra and started kissing and

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

344 Ill.App.3d 74, 800 N.E.2d 455, 279 Ill.Dec. 387
**(Cite as: 344 Ill.App.3d 74, 800 N.E.2d 455)**

sucking her breasts. Tess told him she was 13 years old and a virgin but did not tell him to stop. Defendant had sex with Tess. Defendant then drove Tess back to the mall. At the end of the statement, defendant added that Tess wanted to continue the relationship.

The defendant did not testify at trial. The trial judge found defendant guilty of aggravated criminal sexual assault.

At the sentencing hearing, defendant's father testified in mitigation. Defendant's attorney argued that defendant had changed his life since he had been imprisoned, had gotten involved in a Christian deck of the jail, and wanted to help others. Defendant had a troubled family life; his mother abused alcohol. In aggravation, the State argued that defendant was found guilty in May 1996 of criminal sexual assault of a five-year-old child and placed on intensive probation for three years. He had failed to complete the probation when he committed the present crime. The State asked the judge to follow the statutory guidelines and sentence defendant to natural life.

Defendant spoke in allocution. He read a letter he wrote saying he was involved in the Cook County jail's Life Learning Program based on Christian living and had changed his life. He was 23 years old, and he recognized he had made bad choices in his life. He had a young son he wanted to raise. He apologized to the victim and her family.

In sentencing defendant to natural life, the judge said:
**\*\*460 \*\*\*392** "Well, I have listened to the facts, prior conviction, obviously. And the presentence investigation. And the law doesn't give me much choice in this matter which basically ties my hands. So it makes my decision easy and it makes it difficult. Although I believe you should receive a harsh penalty, clearly not convinced that life without parole is the penalty. But be that as it may, the state legislature and the populace that elects the state legislature controls what the laws are in this state. And I cannot sentence you to anything but life imprisonment in Illinois. And the law mandates that I do that. And that is the sentence

that you are to receive."

### DECISION

Defendant was convicted under the aggravated criminal sexual assault statute, which provides:
"(a) [t]he accused commits aggravated criminal sexual assault if he or she commits criminal sexual assault and any of the following aggravating circumstances existed during * * * the commission of the offense:
* * *
**\*80** (2) the accused caused bodily harm * * * to the victim." 720 ILCS 5/ 12-14(a)(2) (West 2000).

Aggravated criminal sexual assault is a Class X felony, normally punishable by a term of 6 to 30 years. 720 ILCS 5/12-14(d)(1) (West 2000); 730 ILCS 5/5-8-1(a)(3) (West 2000). However, where a person is convicted of the offense of aggravated criminal sexual assault after having been convicted of a separate criminal sexual assault, the person " shall be sentenced to a term of natural life imprisonment." 720 ILCS 5/12-14(d)(2) (West 2000); 730 ILCS 5/5-8-1(a)(2.5) (West 2000).

### I. Proportionate Penalties Clause

[1][2][3][4][5] A statute is presumed constitutional. The party challenging the statute bears the burden of demonstrating its invalidity. *People v. Malchow,* 193 Ill.2d 413, 418, 250 Ill.Dec. 670, 739 N.E.2d 433 (2000). A court has a duty to construe a statute in a manner that upholds its constitutionality if it can reasonably be done, and any doubt must be resolved in favor of the statute's validity. *Malchow,* 193 Ill.2d at 418, 250 Ill.Dec. 670, 739 N.E.2d 433; *People v. Morgan,* 203 Ill.2d 470, 486, 272 Ill.Dec. 160, 786 N.E.2d 994 (2003). The question of a statute's constitutionality is subject to *de novo* review. *People v. Carney,* 196 Ill.2d 518, 526, 256 Ill.Dec. 895, 752 N.E.2d 1137 (2001).

The proportionate penalties clause of the Illinois Constitution dictates that "all penalties shall be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

800 N.E.2d 455

Page 7

344 Ill.App.3d 74, 800 N.E.2d 455, 279 Ill.Dec. 387
**(Cite as: 344 Ill.App.3d 74, 800 N.E.2d 455)**

determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const.1970, art. I, § 11.

In *People v. Lombardi*, 184 Ill.2d 462, 474, 235 Ill.Dec. 478, 705 N.E.2d 91 (1998), the Illinois Supreme Court identified three analyses courts use to assess proportionality claims: (1) whether the penalty is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community (*People v. Bailey*, 167 Ill.2d 210, 236, 212 Ill.Dec. 608, 657 N.E.2d 953 (1995); *People v. Gonzales*, 25 Ill.2d 235, 240, 184 N.E.2d 833 (1962)); (2) whether the described offense, when compared to a similar offense, carries a more severe penalty although the proscribed conduct creates a less serious threat to the public health and safety (*People v. Moss*, 206 Ill.2d 503, 276 Ill.Dec. 855, 795 N.E.2d 208 (2003); *People v. Davis*, 177 Ill.2d 495, 503, 227 Ill.Dec. 101, 687 N.E.2d 24 (1997)); or (3) whether the described offense, when compared to an offense having identical **461 ***393 elements, carries a different sentence (*People v. Lewis*, 175 Ill.2d 412, 417-18, 222 Ill.Dec. 296, 677 N.E.2d 830 (1996)). *Morgan*, 203 Ill.2d at 486-87, 272 Ill.Dec. 160, 786 N.E.2d 994.

Defendant challenges his sentence under the first two proportionate penalties tests. We first discuss whether the statute mandating life imprisonment for defendant carries a more severe penalty than that of a similar offense that creates a more serious threat to the public health *81 and safety. See *Davis*, 177 Ill.2d at 503, 227 Ill.Dec. 101, 687 N.E.2d 24. Defendant compares the offense of aggravated criminal sexual assault with that of female genital mutilation and first degree murder.

[6] The cross-comparison analysis comparing two similar offenses involves a potential two-step inquiry, depending on the answer to the first question: (1) whether the offenses being compared share a common statutory purpose (*Lombardi*, 184 Ill.2d at 476, 235 Ill.Dec. 478, 705 N.E.2d 91; *Moss*, 206 Ill.2d at 522, 276 Ill.Dec. 855, 795 N.E.2d 208); and (2) if the purposes are related, whether the less serious offense is punished more

harshly than the more serious offense (*Lombardi*, 184 Ill.2d at 475-76, 235 Ill.Dec. 478, 705 N.E.2d 91; *Davis*, 177 Ill.2d at 506, 227 Ill.Dec. 101, 687 N.E.2d 24).

[7] If the purposes of the two statutes are different, comparative proportionality review is inappropriate. The inquiry ends. *Moss*, 206 Ill.2d at 523, 276 Ill.Dec. 855, 795 N.E.2d 208. Where statutes are enacted for different purposes, we presume that the legislature considered different factors in determining the appropriate penalties for the offenses, and we defer to the legislature's judgment. *Lombardi*, 184 Ill.2d at 476, 235 Ill.Dec. 478, 705 N.E.2d 91.

[8] If the purposes of the two statutes are related, we must then determine whether the offense with the harsher penalty is more or less serious than the offense with the lesser penalty. *Lombardi*, 184 Ill.2d at 475-76, 235 Ill.Dec. 478, 705 N.E.2d 91, citing *Davis*, 177 Ill.2d at 506, 227 Ill.Dec. 101, 687 N.E.2d 24. Factors to be considered in determining the seriousness of an offense are the degree of harm, the frequency of the crime, and the high risk of bodily harm associated with it. *Moss*, 206 Ill.2d at 529, 276 Ill.Dec. 855, 795 N.E.2d 208, citing *People v. Lee*, 167 Ill.2d 140, 146, 212 Ill.Dec. 231, 656 N.E.2d 1065 (1995); *People v. Hill*, 199 Ill.2d 440, 454, 264 Ill.Dec. 670, 771 N.E.2d 374 (2002).

Defendant contends the legislative purpose of the female genital mutilation statute is related to that of aggravated criminal sexual assault. We do not agree.

A person commits the offense of female genital mutilation when he or she "knowingly circumcises, excises, or infibulates, in whole or in part, the labia majora, labia minora, or clitoris of another." 720 ILCS 5/12-34(a) (West 2000). Female genital mutilation is a Class X felony, punishable by 6 to 30 years in prison. 720 ILCS 5/12-34(c) (West 2000); 730 ILCS 5/5-8-1(a)(3) (West 2000).

Defendant contends female genital mutilation and aggravated criminal sexual assault are similar offenses because both involve an act of sexual

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

800 N.E.2d 455                            Page 8

344 Ill.App.3d 74, 800 N.E.2d 455, 279 Ill.Dec. 387
**(Cite as: 344 Ill.App.3d 74, 800 N.E.2d 455)**

penetration as a necessary element of the offense. Circumcision, excision, and infibulation involve contact with and/or the intrusion of an object into a female's sex organs and are therefore acts of sexual penetration. Female genital mutilation involves cutting ("circumcision"), removing the genitals (" excision"), or sewing the vagina almost completely closed after the genitals are removed ("infibulation" ). See **462***394*82*Nwaokolo v. Immigration & Naturalization Service,* 314 F.3d 303, 308-309 (7th Cir.2002) (granting a stay of removal for mother where daughter would suffer irreparable injury if made to accompany mother to Nigeria and undergo female genital mutilation). Defendant contends both offenses also involve some bodily harm.

[9][10] We agree with the State's contention that the goal of the female genital mutilation statute is to prohibit female genital ritual circumcision, an ancient cultural or social custom with no medical value which has health risks to a female child. Use of force is not a statutory element of the offense. Conversely, the goal of the aggravated criminal sexual assault statute is to protect victims from, and punish perpetrators for, sexually harmful and offensive conduct. See *People v. Printy,* 232 Ill.App.3d 735, 742, 174 Ill.Dec. 149, 598 N.E.2d 346 (1992). Moreover, at issue here is a recidivist sentencing provision, which has the purpose of deterring repeat offenders and "imposing harsher sentences on offenders whose repeated convictions have shown their resistance to correction." *People v. Robinson,* 89 Ill.2d 469, 476, 60 Ill.Dec. 632, 433 N.E.2d 674 (1982).

Defendant's analysis comparing the elements of the statutes is incorrect. The proper analysis focuses on the legislative purposes of the statutes. We find aggravated criminal sexual assault and female genital mutilation do not share similar purposes.

[11][12] The language of a statute is the best indication of the legislature's intent. *Lombardi,* 184 Ill.2d at 477, 235 Ill.Dec. 478, 705 N.E.2d 91. The purpose of the female genital mutilation statute is not clear from the language itself. Where a statute is ambiguous, we may turn to the legislative history as an aid in interpreting the provision. *People v.*

*Donoho,* 204 Ill.2d 159, 173, 273 Ill.Dec. 116, 788 N.E.2d 707 (2003).

The transcripts of the legislative debates reveal the purpose of the female genital mutilation statute is as the State contends. The goal was to prevent " female circumcision," or the "medically unnecessary modification of the female genitalia" which is practiced in other parts of the world for religious, superstitious, and traditional reasons. 90th Ill. Gen Assem., House Proceedings, February 19, 1997, at 120-21 (statements of Representatives Mulligan and Schakowsky). According to the House sponsor of the bill, the reason for the law was the large immigrant population coming to the United States from countries that followed the practice and patients requesting doctors to perform the procedure. 90th Ill. Gen Assem., House Proceedings, February 19, 1997, at 121-22 (statements of Representative Mulligan).

By its language, the clear purpose of the aggravated criminal sexual assault statute is to punish and deter violent sexual offenders. This court has held the purpose of the aggravated criminal sexual assault statute is to protect victims where such conduct is accompanied by certain aggravating circumstances. *83 Printy,* 232 Ill.App.3d at 742, 174 Ill.Dec. 149, 598 N.E.2d 346 . The underlying purpose served by the law is to protect victims and punish perpetrators by curtailing sexually harmful and offensive conduct. *Printy,* 232 Ill.App.3d at 742, 174 Ill.Dec. 149, 598 N.E.2d 346. That is far different than the purpose behind the prohibition of female genital mutilation.

Since we have determined the statutes have distinct legislative purposes, there is no need to engage in a further cross-comparison of whether the statute that provides for a harsher penalty is less serious than the statute with the lesser penalty. **463***395 *Lombardi,* 184 Ill.2d at 476, 235 Ill.Dec.. 478, 705 N.E.2d 91. However, for the sake of completeness, we will consider the second step in the analysis. We find female genital mutilation is not a more serious offense than aggravated criminal sexual assault where the offender has a prior conviction for criminal sexual assault.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

344 Ill.App.3d 74, 800 N.E.2d 455, 279 Ill.Dec. 387
**(Cite as: 344 Ill.App.3d 74, 800 N.E.2d 455)**

[13] Factors to be considered in determining the seriousness of an offense are the degree of harm, the frequency of the crime, and the high risk of bodily harm associated with it. *People v. Hill,* 199 Ill.2d 440, 454, 264 Ill.Dec. 670, 771 N.E.2d 374 (2002), citing *People v. Lee,* 167 Ill.2d 140, 146, 212 Ill.Dec. 231, 656 N.E.2d 1065 (1995). Also, the legislature may perceive a need to enact a more stringent penalty provision in order to halt an increase in the commission of a particular crime. *Hill,* 199 Ill.2d at 454, 264 Ill.Dec. 670, 771 N.E.2d 374. Because the legislature is better able than the judiciary to identify the evils confronting society and gauge the seriousness of an offense, courts will generally defer to the legislature's judgment that a particular offense is more serious than another. *Hill,* 199 Ill.2d at 454, 264 Ill.Dec. 670, 771 N.E.2d 374, citing *People v. Steppan,* 105 Ill.2d 310, 319, 85 Ill.Dec. 495, 473 N.E.2d 1300 (1985); *Davis,* 177 Ill.2d at 502-03, 227 Ill.Dec. 101, 687 N.E.2d 24.

Defendant contends female genital mutilation is a more serious offense because, unlike aggravated criminal sexual assault, it involves the knowing infliction of severe bodily injury, yet it receives a lesser penalty. It isn't. Both are Class X felonies, carrying sentences of 6-30 years. Aggravated criminal sexual assault becomes more serious when the offender previously was convicted of criminal sexual assault. The penalty, while harsh, is triggered by recidivism.

The State contends, and we agree, the degree of harm resulting from an offense is only one factor to be considered in determining the seriousness of an offense. The State cites other factors such as the pervasive nature of aggravated criminal sexual assault and the harm caused by a recidivist sex offender compared with the rarity of occurrences of female genital mutilation. The legislature could legitimately determine the danger posed by a repeat sex offender is more serious than an isolated incident involving a crude and painful procedure. We are not willing to second-guess that legislative judgment.

[14] Defendant also compares aggravated criminal sexual assault *84 with first degree murder. He contends the punishment of mandatory life imprisonment imposed on a person convicted of aggravated criminal sexual assault after previously being convicted of criminal sexual assault is disproportionate to the penalty range of 20 to 60 years imposed on a person who commits first degree murder after previously being convicted of criminal sexual assault. 730 ILCS 5/5-8-1(a)(1) (West 2000). He cites the United States Supreme Court's decision in *Coker v. Georgia,* 433 U.S. 584, 600, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), where the court held a death sentence for the crime of rape was cruel and unusual punishment in violation of the Eighth Amendment. This case is not applicable here, as defendant makes no Eighth Amendment claim.

Defendant does not attempt to argue the legislative purpose of murder is similar to that of aggravated criminal sexual assault. The two are not comparable, and it is unnecessary to engage in a cross-comparison analysis of which offense is more serious, and which receives a greater penalty. See *Davis,* 177 Ill.2d at 506, 227 Ill.Dec. 101, 687 N.E.2d 24. We would point out some first degree murders carry a sentence of more than 20-60 years. See 730 ILCS 5/5-8-1(a)(1)(c) (West 2000).

**464 ***396 [15] Defendant next contends his mandatory life sentence violates the proportionate penalties clause because it is so disproportionate to the offense as to shock the moral sense of the community. *Lombardi,* 184 Ill.2d at 474, 235 Ill.Dec. 478, 705 N.E.2d 91. He contends he was convicted based on slight and temporary bodily harm that amounted to simple battery-bruises to the victim's breast. Had he not bruised her breast, he says, he would have been convicted of criminal sexual assault, and the court could have imposed at most a term of 30 to 60 years' imprisonment. 720 ILCS 5/ 12-13(b)(2) (West 2000).

Defendant compares this case to *People v. Miller,* 202 Ill.2d 328, 269 Ill.Dec. 503, 781 N.E.2d 300 (2002), where the Illinois Supreme Court held a sentence of natural life imprisonment for a 15-year-old defendant violated the proportionate penalties clause. In *Miller,* the defendant was charged with two counts of first degree murder based on accountability. The defendant was asked

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

344 Ill.App.3d 74, 800 N.E.2d 455, 279 Ill.Dec. 387
**(Cite as: 344 Ill.App.3d 74, 800 N.E.2d 455)**

to be a lookout, while two other individuals shot and killed the two victims.

The defendant's conviction was "the result of three converging statutes." *Miller,* 202 Ill.2d at 340, 269 Ill.Dec. 503, 781 N.E.2d 300. Under the automatic transfer provision of the Juvenile Court Act of 1987 (705 ILCS 405/5-4(6)(a) (West 1996)), the defendant was tried as an adult in criminal court. Under the accountability statute (720 ILCS 5/5-2(c) (West 1996)), the court was barred from considering the defendant's degree of participation in the crime. Finally, the multiple-murder sentencing statute (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1996)) did not allow the court to **\*85** consider the age of the offender or his participation in the crime at the time of sentencing. *Miller,* 202 Ill.2d at 340, 269 Ill.Dec. 503, 781 N.E.2d 300.

The court held a mandatory life sentence with no possibility of parole grossly distorted the facts of the case and did not accurately represent the defendant's personal culpability in a way that shocked the moral sense of the community. *Miller,* 202 Ill.2d at 341, 269 Ill.Dec. 503, 781 N.E.2d 300. "This moral sense is particularly true, as in the case before us, where a 15 year old with one minute to contemplate his decision to participate in the incident and stood as a lookout during the shooting, but never handled a gun, is subject to life imprisonment with no possibility of parole-the same sentence applicable to the actual shooter." *Miller,* 202 Ill.2d at 341, 269 Ill.Dec. 503, 781 N.E.2d 300.

This case is wholly distinguishable from *Miller.* Defendant was not a juvenile offender at the time of the offense. This defendant, unlike the defendant in *Miller,* was a repeat offender. Defendant's personal culpability was not "grossly distorted" by the statute. Rather, defendant's actions fit squarely within the conduct proscribed by the aggravated criminal sexual assault statute. Defendant was not convicted on a theory of accountability, but was the principal offender in the crime. We find the defendant's sentence is not disproportionate to the crime in a way that shocks the moral sense of the community.

In addition, as the State points out, the harm in this

case is not limited to bruising of the victim's breast. The evidence at trial showed the victim was in "severe pain" during the hospital exam and sustained bruises to her vaginal area as well as her breasts, which could have been caused from being held down. We need not speculate about the psychological harm done to victims of forcible sexual assaults. The mandatory life sentence provision reflects the legislature's decision to treat severely those who engage in repetitive conduct **\*\*465 \*\*\*397** of sexual assault because it recognizes the harm caused to victims.

## II. *Apprendi*

Defendant next contends his natural life sentence was based on an unconstitutional statute pursuant to *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi,* the court held, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348.

Defendant was convicted of aggravated criminal sexual assault, and, because of his prior conviction for criminal sexual assault, was subject to a mandatory sentence of natural life imprisonment under **\*86** section 12-14(d) (2). 720 ILCS 5/12-14(d)(2) (West 2000). Defendant contends this recidivist provision is unconstitutional because he was entitled to a trial by jury to prove the fact of his previous conviction beyond a reasonable doubt.

This issue has been decided by this court in *People v. Ware,* 323 Ill.App.3d 47, 57, 256 Ill.Dec. 28, 751 N.E.2d 81 (2001), where we rejected the defendant's contention that section 12-14(d)(2) was unconstitutional under *Apprendi.* In *Ware,* the court held prior convictions are considered an exception to the general rule that facts which increase a penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Ware,* 323 Ill.App.3d at 57, 256 Ill.Dec. 28, 751 N.E.2d 81, citing *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. See also *People v. Lathon,* 317 Ill.App.3d 573, 587,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

800 N.E.2d 455

344 Ill.App.3d 74, 800 N.E.2d 455, 279 Ill.Dec. 387
**(Cite as: 344 Ill.App.3d 74, 800 N.E.2d 455)**

251 Ill.Dec. 296, 740 N.E.2d 377 (2000) (general rule requiring a jury determination of fact issues for sentencing did not apply to recidivist provision under *Apprendi* ); *People v. Roberts,* 318 Ill.App.3d 719, 729, 252 Ill.Dec. 869, 743 N.E.2d 1025 (2000) (defendant's sentencing as a recidivist offender was not subject to *Apprendi* rule); *People v. Ramos,* 318 Ill.App.3d 181, 193, 252 Ill.Dec. 225, 742 N.E.2d 763 (2000) ("*Apprendi* clearly exempts recidivist statutes").

[16] We agree with *Ware* that the holding in *Apprendi* does not apply to section 12-14(d)(2), a recidivist provision, and does not render defendant's sentence unconstitutional.

### III. Right to trial by jury

[17] Defendant's final contention is that section 12-14(d)(2) violates the right to trial by jury guaranteed by the Illinois Constitution. Article I, section 13 of the Illinois Constitution provides that " the right of trial by jury as heretofore enjoyed shall remain inviolate." Ill. Const.1970, art. I, § 13. Defendant contends the existence of a prior conviction, when used to enhance a sentence, is a fact in controversy which must be decided by a jury. This court has addressed a related issue with respect to extended-term sentences in *People v. Pittman,* 326 Ill.App.3d 297, 260 Ill.Dec. 327, 761 N.E.2d 171 (2001) (finding extended-term sentence under section 5-5-3.2(b)(1) and 5-8-2 did not violate defendant's right to jury trial under the Illinois Constitution); and *People v. Smith,* 338 Ill.App.3d 555, 273 Ill.Dec. 328, 788 N.E.2d 1204 (2003) (finding section 5-5-3(c)(8) did not violate right to jury trial under Illinois Constitution).

Despite the substantive differences between the Federal and Illinois constitutional provisions providing the right to a jury trial, the *Pittman* court held the safeguards discussed in *Apprendi* applied to mitigate the constitutional concerns raised by defendant. In *Apprendi,* the Supreme **\*466 \*\*\*398** Court noted that "a defendant's prior conviction does **\*87** not relate to the commission of the offense with which he stands charged and that the prior conviction is the result of proceedings in

which the defendant had the right to a trial by jury and the State was required to establish his guilt beyond a reasonable doubt." *Pittman,* 326 Ill.App.3d at 301, 260 Ill.Dec. 327, 761 N.E.2d 171, citing *Apprendi,* 530 U.S. at 496, 120 S.Ct. 2348.

We find the reasoning in *Pittman* and *Smith* is sound and apply it to this case. We hold section 12-14(d)(2) does not violate the defendant's right to a jury trial pursuant to the Illinois Constitution.

### CONCLUSION

We affirm defendant's conviction and his natural life sentence.

Affirmed.

CAHILL and GARCIA, JJ., concur.
Ill.App. 1 Dist.,2003.
People v. Sanchez
344 Ill.App.3d 74, 800 N.E.2d 455, 279 Ill.Dec. 387

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

97501

January 28, 2004

Hon. Lisa Madigan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601

No.  97501 - People State of Illinois, respondent, v. Juan
              Sanchez, Jr., petitioner.  Leave to appeal,
              Appellate Court, First District.

The Supreme Court today DENIED the petition for leave to appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court on February 19, 2004.

EXHIBIT B

STATE OF ILLINOIS      )
                       )SS
COUNTY OF LIVINGSTON   )


### AFFIDAVIT OF AFFIRMATION

I, Juan Sanchez, being first duly sworn and under oath, state the following:

1) That on June 25, 2004, I have caused to be filed, a timely Post Conviction.

2) That prior too the filing of the above Post Conviction Petition, I have made several written requests for copies of all relating documents (Trial transcripts, Discovery, Post Trial Motion etc) to aid in the drafting of the attached Post Conviction Petition. See Exhibit # 4.(A) and (B).

3) That, though at least one response was made from the paid attorney, Mr. Gross, that represented Petitioner at trial, wherein he required the sum of $100.00 for said copies. Therefore, due to the failure of the Petitioner not obtaining the necessary documents before the filing of this Post Conviction, Petitioner is forced to draft this Petition without the aid of any documentation.

4) That Petitioner is unemployed and without the necessary funds to pay for said documents.

5) FURTHER AFFIANT SAYETH NOT.

Wherefore, Petitioner request of this Honorable Court to take Judicial Notice and allow the Petitioner to obtain all materials pertaining to Case No. 99-CR-2258 from the Clerk of the Court and Supplement this Petition at a later date if necessary.

AFFIANT,

JUAN SANCHEZ

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 25 DAY OF June , 2004.

"OFFICIAL SEAL"
Kathryn J. Donovan
Notary Public, State of Illinois
My Commission Exp. 02/03/2007

EXHIBIT C

# OFFICE OF THE CIRCUIT COURT CLERK OF COOK COUNTY



**DOROTHY BROWN**

CLERK OF THE COURT

### CRIMINAL BUREAU
CRIMINAL DIVISION
Room 526
2650 S. California Ave
Chicago, Illinois 60608
(773) 869-6967
FAX (773) 869-4444

DATE: *August 2, 2004*

*Juan Sanchez #R09249*
*Pontiac C. C. - S.P.C #534*
*P. O. Box 99*
*Pontiac, Il. 61764*

CASE #: *99 CR 02258-01*

RE: _____

DEAR *Juan Sanchez,*

*Please be advised that on 7/23/04, the Honorable Judge Henry R. Simmo dismissed your petition as frivolous and without merit. Off Call.*



MOTION DEPARTMENT
**CRIMINAL DIVISION**





Printed on RECYCLED PAPER

PRINTED WITH SOY INK

#### MISSION STATEMENT
The mission of the office of the Clerk of the Circuit Court of Cook County is to serve the citizens of Cook County and the participants in the system in a timely, efficient and ethical manner. All services, information and court records will be provided with courtesy and cost ef

EXHIBIT D

P84

*6-2-06*

NOTICE

The text of this order may be
changed or corrected prior to the
time for filing of a Petition for
Rehearing or the disposition of
the same.

SECOND DIVISION
June 6, 2006

MARY BOLAND
Patricia Shea

No. 1-04-2986

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

06-572

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 99 CR 2258 |
| | ) | |
| JUAN SANCHEZ, JR., | ) | Honorable |
| | ) | Henry R. Simmons, Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

O R D E R

Defendant, Juan Sanchez, Jr., appeals from an order of the
trial court, which summarily dismissed his *pro se* postconviction
petition as frivolous and patently without merit.  On appeal,
defendant contends that he stated the gist of a meritorious claim
of ineffective assistance of counsel based on his counsel's
failure to present defendant's own testimony and failure to
present a witness on his behalf.  We affirm.

The State's evidence demonstrated that, in 1999, defendant
sexually assaulted the 13-year-old victim, Tess T., in his car.
At the time, defendant was a friend of the victim's parents.  The
victim reported the incident to her mother, who then called the
police.  The victim's mother accompanied Detective Terrence
O'Connor to a location where she believed they could find
defendant.  Detective Robert Mihaljo and a uniformed police

EXHIBIT E

1-04-2986

officer approached the residence, and after conversing in Spanish with the woman[1] who answered the door, she invited the officers into the house. The officers informed defendant that he was a suspect in a sexual assault, and asked him to step outside. The victim's mother then identified defendant, and Detectives O'Connor, Mihaljo and Duffin arrested him. After being read the <u>Miranda</u> warnings, defendant gave oral and written statements, in which he claimed the incident was consensual. The written statement was taken by Assistant State's Attorney Luke Sheridan, and after reviewing and signing each page of the statement, defendant instructed the ASA to add that the victim wanted to continue the relationship.

Prior to trial, the court denied defendant's motions to quash his arrest and suppress his statement. In regards to the former motion, the trial court specifically found, based on O'Connor's testimony, that there was sufficient evidence of probable cause to arrest defendant.

At trial, the State read defendant's statement into the record. The statement described defendant's version of the events, and indicated that he read the statement and understood that he could make changes or corrections to it. Defendant did not testify on his own behalf. Defense counsel stated that:

---

[1]It was later learned that the woman was Rocio Figueroa, the mother of defendant's girlfriend and grandmother of his child.

- 2 -

1-04-2986

> "Judge, with regard to the defense case
> in chief, I've explained to [defendant] that
> he has an absolute right to testify, that
> it's his decision and he tells me he wishes
> not to testify in this case."

When asked by his counsel whether the statement to the court was accurate, defendant agreed.  The trial court also asked defendant whether it was his decision not to testify, and he said it was.

The trial court found defendant guilty of aggravated criminal sexual assault, and sentenced him to mandatory life imprisonment due to a prior conviction for criminal sexual assault.  On direct appeal, defendant asserted a number of constitutional claims regarding his sentence.  This court affirmed his conviction and sentence.  People v. Sanchez, 344 Ill. App. 3d 74 (2003).

Defendant then filed a *pro se* postconviction petition, alleging, *inter alia*, ineffective assistance of counsel for "manipulating" him not to testify, and that his fourth amendment rights were violated by the trial court's denial of his motion to quash his arrest.  To support his petition, defendant attached a "Memorandum of Law and Finding of Facts," a personal affidavit and an affidavit by Rocio Figueroa.  In his affidavit, defendant alleged that he told his attorney that he wanted to testify to "tell the whole story" because it was not accurately reflected in

- 3 -

1-04-2986

the statement he gave to the police; however, his attorney
indicated that he was not prepared for defendant's testimony.
Defendant claimed that he told the trial court he did not want to
testify solely on the basis of his attorney's lack of
preparedness.

In Rocio Figueroa's affidavit, she claimed that police
knocked on her door, and asked if defendant was present.  She
then requested to see a warrant, "but instead of answering or
showing *** any papers they came into [the] house without
permission, grabbed [defendant], and placed him in handcuffs."
Figueroa's affidavit additionally stated that defendant was
arrested in the attic of her home where he had slept as an
"overnight guest."  The trial court summarily dismissed
defendant's petition as frivolous and patently without merit.
This appeal followed.[2]

The question of whether a summary dismissal of a
postconviction petition was erroneous is reviewed *de novo*.
People v. Coleman, 183 Ill. 2d 366, 388-89 (1998).

In order to survive the first-stage of postconviction
proceedings, a defendant must allege a constitutional violation
necessitating relief under the Act.  People v. Smith, 326 Ill.
App. 3d 831, 839 (2001).  The defendant is merely required to

--------

[2]This court granted defendant's motion to consider the
notice of appeal filed as a late notice of appeal.

1-04-2986

state the gist of a constitutional claim, which is a low

threshold demanding minimal detail.  <u>People v. Jones</u>, 341 Ill.

App. 3d 103, 106 (2003), citing <u>People v. Edwards</u>, 197 Ill. 2d

239, 244 (2001).  However, the defendant must provide affidavits,

records or other evidence to support the allegations.  See 725

ILCS 5/122-2 (West 2004)).  "Unless positively rebutted by the

record, all well-pled facts are taken as true."  <u>Smith</u>, 326 Ill.

App. 3d at 839.  Allegations that are positively rebutted by the

record, however, aid in the determination of whether the

defendant's petition is frivolous or patently without merit.

<u>Smith</u>, 326 Ill. App. 3d at 840.

Defendant contends that his counsel was ineffective for

"manipulating" him not to testify.  The State responds that the

record contradicts defendant's claim.  In the alternative, the

State contends that defendant failed to present the gist of a

meritorious claim of ineffective assistance of counsel.

A defendant has a fundamental right to testify at trial, and

whether to exercise that right is not considered " 'a strategic

or tactical decision best left to trial counsel.' " <u>People v.</u>

<u>Hernandez</u>, 351 Ill. App. 3d 28, 36 (2004), quoting <u>People v.</u>

<u>Dredge</u>, 148 Ill. App. 3d 911, 913 (1986).  In the instant case,

defendant argues that his counsel "manipulated" him into not

testifying on the basis that defense counsel expressed that he

was not prepared for defendant's testimony.  Defendant, however,

1-04-2986

fails to allege or present any evidence demonstrating that his
counsel stated that he could not testify.  On the contrary, the
record indicates that defense counsel apprised defendant of his
"absolute right to testify."  *Cf.* Dredge, 148 Ill. App. 3d at
913.  Accordingly, defendant's claim fails as it is directly
contradicted by the record.

Defendant further contends he stated the gist of a claim of
ineffective assistance of counsel for failing to present Rocio
Figueroa as a witness at his suppression hearing.  However,
review of defendant's postconviction petition and accompanying
documents demonstrates that he failed to assert the gist of a
constitutional claim for ineffective assistance of counsel.

Under the performance prong of the Strickland test, it is
well-settled that a counsel's decision whether to present a
witness is a strategic choice, and generally will not support a
claim for ineffective assistance.  People v. Brown, 336 Ill. App.
3d 711, 718 (2002).  Ineffective assistance may result, however,
where counsel fails "to present exculpatory evidence *of which he
is aware*, including failure to call witnesses whose testimony
would support an otherwise uncorroborated defense."  (Emphasis
added.) Brown, 336, Ill. App. 3d at 718, citing People v. King,
316 Ill. App. 3d 901, 913 (2000).

In his petition, defendant argued that his fourth amendment
rights were violated on the basis that the police arrested him

- 6 -

1-04-2986

without a warrant in Rocio Figueroa's home, where he was an
"overnight guest."  In support of this assertion, Figueroa's
affidavit alleged that, despite asking to see a warrant, the
officers entered her home without permission and arrested
defendant while still inside.  Defendant, however, never alleged
that his counsel was ineffective for failing to present Rocio
Figueroa as a witness at the suppression hearing.  Moreover,
defendant failed to demonstrate that his attorney was even aware
of her existence.  Cf. Brown, 336 Ill. App. 3d at 718-20 (finding
the gist of a claim for ineffective assistance where witnesses
stated in their affidavits that they contacted the defendant's
counsel and presented alibi defenses, but were never called to
testify).  Accordingly, defendant failed to demonstrate that his
counsel's performance was objectively deficient.  See Phyfiher,
361 Ill. App. 3d at 886.  Furthermore, defendant completely
failed to allege that he incurred resulting prejudice from his
counsel's performance.  Defendant failed to demonstrate there was
a reasonable probability that Rocio Figueroa's testimony would
have altered the outcome of the trial.  As a result, defendant
did not present the gist of a meritorious claim of ineffective
assistance of counsel.

Accordingly, we affirm the judgment of the circuit court of
Cook County.

Affirmed.

Wolfson, J., with Garcia, P.J., and Hall, J., concurring.

- 7 -

103127

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

November 29, 2006

Hon. Lisa Madigan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601

No. 103127 - People State of Illinois, respondent, v. Juan
Sanchez, Jr., petitioner.  Leave to appeal,
Appellate Court, First District.

The Supreme Court today DENIED the petition for leave to appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court on January 4, 2007.

EXHIBIT F